UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TYLER TRUONG | CIVIL ACTION NO: 23-CV-136 |
| VERSUS | JUDGE DARREL JAMES PAPILLION |
| MAGNOLIA FLEET, LLC | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Defendant Magnolia Fleet, LLC ("Magnolia Fleet"). R. Doc. 13. Plaintiff Tyler Truong ("Truong"), individually and on behalf of all others similarly situated, opposes the motion. R. Doc. 14. For the reasons assigned below, Magnolia Fleet's motion is **DENIED**.

## BACKGROUND

Magnolia Fleet provides barge fleeting and marine transportation services. R. Doc. 12 at ¶ 16. To render these services, Magnolia Fleet employs "shore tankermen,"[1] whose job duties allegedly include:

> [D]riving to a docked transport ship, traveling aboard the transport ship to a customer's ship . . . , placing the fuel line in the customer's ship to refuel it, monitoring the refueling, then detaching the fuel hose, riding back to shore, and returning to the office . . . to wait for the next refueling call.

*Id.* at ¶ 20. Between June 2022 and December 2022, Truong was employed by Magnolia Fleet as a shore tankerman. *Id.* at ¶ 35. Truong alleges that throughout this employment, he and other shore tankermen "typically worked in excess of fifty (50) hours each workweek," but were not paid overtime. *Id.* at ¶¶ 29, 32.

---

[1] Magnolia Fleet fervently opposes Truong's assertion that the position of "shore tankerman" exists or that it differs in any way from "tankerman." The Court is obligated, however, for purposes of the instant motion, to accept Truong's factual allegations as true.

On January 10, 2023, Truong filed suit against Magnolia Fleet, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, on behalf of himself and "current and former shore tankermen who were employed by Magnolia [Fleet] at any time from January 6, 2020, through the final disposition of this matter, and have been subjected to the same illegal pay system under which . . . Truong worked and was paid." R. Docs. 1 and 13 at ¶ 9. On March 28, 2023, Magnolia Fleet filed the instant motion to dismiss, urging the Court to dismiss the claims brought individually by Truong, as well as those brought on behalf of the putative collective.

## LEGAL STANDARD

I.  *General Motion to Dismiss Standard*

The Federal Rules of Civil Procedure allow dismissal of a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, the pleading must contain a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While the pleading need not assert detailed factual allegations, it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678, 129 S. Ct. 1937 (2009).

In considering a motion to dismiss, the court must "accept as true the well-pleaded factual allegations in the complaint." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotations and citations omitted). Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly*, 550 U.S. at 127 S. Ct.

1955. Even so, the court may dismiss a complaint "if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation omitted).

II.     *Motion to Dismiss Standard Applicable to FLSA Putative Collectives*

In cases involving a claim arising under the FLSA, courts should separately consider claims brought by the individual plaintiff and those brought on behalf of a putative collective. *Flores v. Act Event Servs., Inc.*, 55 F.Supp.3d 928, 933 (N.D. Tex. Oct. 21, 2014) (quoting *Creech v. Holiday CVS, LLC*, No. 11-CV-46, 2012 WL 4483384, at *3 (M.D. La. Sept. 28, 2012)). "There is no specific guidance from the Fifth Circuit Court of Appeals" as to how a motion to dismiss putative action claims differs from a motion to dismiss an individual plaintiff's claims, and as a result, district courts' approaches to motions to dismiss collective FLSA claims vary. *Creech*, 2012 WL 4483384, at *2. At least one district court in the Fifth Circuit has found that the question of whether a plaintiff has pleaded facts to support the propriety of a putative collective should be determined at the certification stage rather than through a motion to dismiss. *Hoffman v. Cemex, Inc.*, No. 09-CV-3144, 2009 WL 4825224, at *4 (S.D. Tex. Dec. 8, 2009). The majority of courts, however, consider a motion to dismiss to be a proper vehicle through which to consider the sufficiency of a FLSA claim brought on behalf of a putative collective. *Flores*, 55 F.Supp.3d at 934; *Creech*, 2012 WL 4483384, at *3; *Guilbeau v. Schlumberger Tech. Corp.*, No. 21-CV-142, 2022 WL 199271, at *6 (W.D. Tex. Jan. 21, 2022); *Maldanado v. New Orleans Millworks, LLC*, No. 17-CV-1015, 2017 WL 2472358, at *3 (E.D. La. June 8, 2017).

This Court agrees with the apparent consensus among federal district courts that FLSA claims brought on behalf of a collective are subject to a motion to dismiss for failure to state a

3

claim. Notably, Rule 12(b)(6) motions to dismiss and motions for conditional certification present two distinct questions.

> [M]otion[s] to dismiss do[] not, in the Court's opinion, simply "end-run the certification process by trying certification on the face of the complaint." To survive a motion to dismiss, a plaintiff must give a defendant fair notice of the putative class. No evidence is required. The plaintiff's reward for surviving a motion to dismiss is discovery. Moreover, "counsel may have some incentive to keep the claims unspecific to achieve the largest possible class; the motion to dismiss is a defendant's shield against this danger. On the other hand, to be granted conditional certification, a plaintiff must produce evidence which allows the Court to conclude that a reasonable basis exists for finding that there are other similarly situated employees who wish to opt-in to the action . . . . The plaintiff's reward for conditional certification is the opportunity to send notice of the action to putative class members.

*Dyer*, No. 12-CV-1785, 2013 WL 609307, at *3 (N.D. Ga. Feb. 19, 2013) (internal citations omitted). The "arguably more liberal Rule 12(b)(6) standard allows both the rule and the certification process to play their proper role in the management of collective actions." *Flores*, 55 F.Supp.3d at 934 (quoting *Dyer*, 2013 WL 609307, at *3). For this reason, the Court does not consider dismissal of a collective action based on a Rule 12(b)(6) motion to be inherently improper.

## ANALYSIS

Magnolia Fleet seeks dismissal of Truong's individual claim, as well as the claim brought on behalf of the putative collective. Magnolia Fleet argues Truong's individual claim must be dismissed because he is a seaman, and seamen are statutorily exempt from FLSA protections. In support of its exemption argument, Magnolia Fleet points to four exhibits attached to its motion to dismiss, as well as certain allegations in the Amended Complaint that, according to Magnolia Fleet, show Truong's position rendered him an exempt seaman. Magnolia Fleet then argues that the putative collective's claim must be dismissed because the collective is overly broad and ill-defined to the point that it is insufficient to put Magnolia Fleet on notice as to whom the collective encompasses.

In response, Truong argues the seaman exemption is an affirmative defense, and "motions to dismiss typically cannot be granted on affirmative defense grounds unless a successful affirmative defense appears clearly on the face of the pleadings." R. Doc. 14 at 3 (internal quotations and citations omitted). Truong insists the seaman exemption is not clear from the face of the pleadings and argues the Amended Complaint includes factual allegations supporting the position that Truong was *not* a seaman. Truong also argues Magnolia Fleet's reliance on the exhibits attached to its motion to dismiss is improper. Finally, Truong rejects Magnolia Fleet's argument that the putative collective is overly broad, vague, and ill-defined. Truong argues the Amended Complaint specifies "who is involved, what they did, and how they were paid," and that this is sufficient to overcome a Rule 12(b)(6) motion.

Before turning to the merits of Magnolia Fleet's motion, the Court will consider the procedural issues raised by the parties. First, whether Magnolia Fleet may seek dismissal on an affirmative defense, and second, whether the Court may consider the exhibits attached to Magnolia Fleet's motion to dismiss.

I. *Whether Magnolia Fleet May Seek Dismissal Based on an Affirmative Defense at the Motion to Dismiss Stage*

As a threshold matter, Truong argues Magnolia Fleet's motion is improper because it urges dismissal based on an affirmative defense. Indeed, a plaintiff's status as a seaman is an affirmative defense to FLSA liability. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196, 94 S. Ct. 2223 (1974) ("[T]he general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof."). And while "Rule 12(b)(6) motions to dismiss typically cannot be granted on affirmative defense grounds," a district court may grant such a motion if "a successful affirmative defense appears clearly on the face of the pleadings." *Tom Hussey Photography, LLC v. HEROfarm, LLC*, No. 21-CV-684, 2021 WL

5

2710508, at *1 (E.D. La. July 1, 2021) (quoting *Est. of Barré v. Carter*, 272 F.Supp.3d 906, 930 (E.D. La. July 25, 2017)) (internal quotations omitted); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  Thus, Magnolia Fleet's motion may be granted, provided it is clear from the face of the pleadings that Truong is a seaman.

> II.     *Whether the Court May Consider Exhibits Attached to Magnolia Fleet's Motion*

Truong next argues the four exhibits attached to Magnolia Fleet's motion are outside the pleadings and may not be considered in the Court's analysis.  The four exhibits are webpages from Magnolia Fleet's website: Exhibit A is the "About Us" page; Exhibit B is the "Employment Opportunities" page; Exhibit C is the "Tankerman" job description page; and Exhibit D is the "Midstream Fuel" page.  R. Docs. 13-2, 13-3, 13-4, and 13-5.  As a general rule, when deciding whether to grant a motion to dismiss, a court may not look beyond the complaint.  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  There is an exception to this general rule, articulated in *Collins v. Morgan Stanley Dean Witter*, however, that allows a court to consider exhibits attached to a motion to dismiss provided the exhibits are referenced in the plaintiff's complaint and central to his claim.  224 F.3d 496, 998-99 (5th Cir. 2000).  Magnolia Fleet invokes the *Collins* exception and argues that "because Truong has referred [to] and relied on the website throughout his Amended Complaint, Magnolia Fleet may permissibly refer to and rely on the website in its Motion to Dismiss." R. Doc. 13-1 at 3 n.4.  The Court disagrees.

As an initial matter, Truong does not refer to all the exhibits in the Amended Complaint.  The Amended Complaint includes a sole citation to the "About Us" page on Magnolia Fleet's website.  Magnolia Fleet seeks to use this citation as license to attach to its motion three separate pages from the website.  But Truong's singular citation to the "About Us" page hardly constitutes reference on Magnolia Fleet's *entire website.  See Shanze Enter., Inc., v. Am. Cas. Co. of Reading,*

*Pa.*, 150 F.Supp.3d 771, 777 (N.D. Tex. Dec. 15, 2015) ("But the court will not consider information found on the . . . website that is neither in the Complaint nor in an exhibit to the Complaint. The court has found no authority to support the proposition that . . . the court must consider an entire website when only part of the website is included in a printout that is attached as an exhibit to the complaint in the underlying suit."). To the extent it was a reference at all, Truong's citation to the "About Us" page was a reference only to that webpage. There are no other references or citations to the Magnolia Fleet website in general, and certainly not to the specific webpages represented by Exhibits B, C, or D.

Even if the Court were to consider Truong's reference to a single webpage as a reference to the entire website, it still could not consider the exhibits. Magnolia Fleet argues the exhibits may be considered because they are referred to and relied on in the Amended Complaint. But Magnolia Fleet's analysis ignores the second requirement of the *Collins* exception—that the exhibits be central to Truong's claim. The Fifth Circuit has not articulated a specific test to determine when an exhibit is central to a plaintiff's claims, but "[c]ase law does suggest . . . that a document satisfies the centrality component when it is necessary to establish an element of one of the plaintiff's claims." *Antero Res. Corp. v. C&R Downhole Drilling*, No. 16-CV-668, 2019 WL 13193898, at *2 (N.D. Tex. July 22, 2019); *Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co.*, No. 22-CV-1018, 2022 WL 3576759, at *2 (E.D. La. Aug. 19, 2022) (quoting *Collins*, 224 F.3d at 499) ("A document is central to a claim if its attachment 'merely assists the plaintiff in establishing the basis of the suit.'"). What *is* clear is that the centrality requirement is not met when an exhibit is central only to the defendant's defense, and not the plaintiff's claim. *See Scanlan*, 343 F.3d at 536 ("Although the plaintiffs rely on the Final Report in their complaints, certainly the report is not central to their claims. Indeed, it is much more central to the University

7

Officials' defenses."); *Johnson v. Hosp. Corp. of Am.*, No. 11-CV-549, 2012 WL 13148747, at 4 n.13 (W.D. Tex. May 9, 2012) (noting that it is "inappropriate to apply the *Collins* exception when a document is central to the defendant's defenses, as opposed to the plaintiff's claims") (internal citation omitted); *Ambler v. Williamson Cnty., Tex.*, No. 20-CV-1068, 2021 WL 769667, at *4 ("While the Video may be central to Defendant's defense in this case, Defendant has failed to demonstrate that the Video is central to Plaintiffs' claims.").

A review of the exhibits and the Amended Complaint shows that while the exhibits may be central, or at least relevant, to Magnolia Fleet's seaman exemption defense, they are not central to Truong's FLSA claim. Truong brings a failure to pay overtime claim under the FLSA which requires that Truong establish: (1) there was an employer/employee relationship; (2) the employee was covered under the FLSA; (3) the employer violated the overtime wage requirements; and (4) the amount of overtime compensation that is due. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). The exhibits are webpages describing services Magnolia Fleet provides; current job openings at Magnolia Fleet and the benefits for those positions; the description of a tankerman; and a statement that Magnolia Fleet provides midstream fuel services, as well as a description of midstream fuel services. The Court struggles to see what, if any, relevance these webpages have in assisting Truong in establishing a FLSA failure to pay overtime claim. To the extent the exhibits are relevant, they appear to be much more relevant to Magnolia Fleet's affirmative defense that Truong is not entitled to FLSA protections because, under Magnolia's Fleet's analysis, he is a seaman.[2] But being relevant, or even central, to Magnolia Fleet's defense does not render the exhibits central to Truong's claim. *See Scanlan*, 343 F.3d at 537. Therefore, the Court may not consider the exhibits attached to Magnolia Fleet's motion.

---

[2] The Court takes no position on whether these exhibits, should they ever be properly before the Court, will be of any benefit in showing that Truong or the members of the alleged putative collective are seamen.

### III. *Whether the Seaman Exemption Is Clear from the Face of the Pleadings*

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment . . ." 29 U.S.C. § 207(a)(1). "An employee is not protected by this broad protection, however, if he falls within an exemption." *Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 279 (5th Cir. 2014). Magnolia Fleet argues that Truong may not recover under the FLSA because he is a seaman, and seamen are not covered by FLSA protections. Indeed, the FLSA lists as one of its exemptions "an employee employed as a seaman." 29 U.S.C. § 213(b)(6). An employee is considered a seaman if: "(1) the employee is subject to the authority, direction, and control of the master; and (2) the employee's service is primarily offered to aid the vessel as a means of transportation, provided that the employee does not perform a substantial amount of different work." *Coffin*, 771 F.3d at 369.

The parties argue extensively about whether the Amended Complaint alleges Truong meets the second prong of the seaman analysis, i.e., whether Truong's service was primarily offered to aid vessels as a means of transportation and whether he performed a substantial amount of different work. The Court need not answer this question, however, because the Amended Complaint is devoid of any facts that, if proven, would show Truong satisfies the first prong of the seaman standard. Simply, Truong does not allege he was subject to the authority, direction, or control of the master. In its reply brief, Magnolia Fleet conclusorily argues "[Truong], as an employee of the company operating the vessels on which he rode, was subject to the control of the master of any vessel he rode." R. Doc. 18 at 6. Magnolia Fleet's unsupported statement does not change the fact that no such allegation is found on the face of Truong's complaint.[3] For the seaman

---

[3] In its memorandum in support of its motion, Magnolia Fleet cites to Exhibit C in support for its proposition that Truong, as a shore tankerman, took direction from the master. As explained above, the Court does not consider

9

exemption to apply, an employee must satisfy both elements of the seaman definition. It is not clear from the face of the pleadings that Truong satisfies the first prong of the definition and, thus, Magnolia Fleet has failed to show the seaman exemption is clear from the face of the Amended Complaint. Accordingly, to the extent Magnolia Fleet seeks dismissal of Truong's claim on the basis that he was a seaman, Magnolia Fleet's motion is denied.[4]

  IV.  *Whether the Putative Collective Is Sufficiently Defined*

Truong also brings a FLSA claim on behalf of a putative collective, defined in the Amended Complaint as "those current and former shore tankermen who were employed by Magnolia [Fleet] at any time from January 6, 2020, through the final disposition of this matter, and have been subjected to the same illegal pay system under which . . . Truong worked and was paid." R. Doc. 12 at ¶ 9. Magnolia Fleet argues the claim brought on behalf of the putative collective must be dismissed because the definition is "fatally overbroad and fails to properly inform Magnolia Fleet as to who makes up the putative class." R. Doc. 13-1 at 12.

To prevail on a motion to dismiss in the FLSA collective context, "a plaintiff's complaint must allege facts sufficient to demonstrate that he and potential plaintiffs were victims of a common policy or plan that violate the law." *England v. Admins. of the Tulane Ed. Fund*, No. 16-CV-3184, 2016 WL 3902595, at *4 ("*England I*") (internal quotations and citations omitted). To meet this standard, district courts require the complaint give the defendant fair notice of the putative class. *Id.* (quoting *Flores*, 55 F.Supp.3d at 940). Courts have generally found that a

---

Exhibit C. Even if the Court were to consider Exhibit C, however, its contents would not change the Court's analysis. Exhibit C notes that tankermen are subject to the control of the master. Truong and the putative collective allege they are *shore tankermen*, and, thus, based on the allegations in the Amended Complaint, which the Court must accept as true, Exhibit C does not relate to Truong or the putative collective.

[4] It is unclear whether Magnolia Fleet seeks dismissal of the collective members' claim on this basis as well. To the extent it does, Magnolia Fleet's motion fails because the Amended Complaint does not include allegations that the putative members were subject to the control of the master.

10

relevant consideration in determining this is whether the complaint "provide[s] details about or descriptions of the similarly situated parties, along with sufficient facts to show that they were subject to the same pay provisions." *Id.*; *Tillman v. La. Children's Med. Ctr.*, No. 16-CV-14291, 2017 WL 1399619, at *2 (E.D. La. Apr. 19, 2017).

The Court finds two decisions in *England v. Administrators of the Tulane Educational Fund* to be particularly instructive of this standard. 2016 WL 3902595; No.16-CV-14291, 2016 WL 6520146 (E.D. La. Nov. 3, 2016) ("*England II*"). *England* involved an academic tutor at Tulane University who alleged Tulane unlawfully denied him overtime pay. 2016 WL 6520146, at *1. England brought suit on behalf of himself, as well as "all similarly situated hourly, non-exempt employees employed by Tulane within the past three years who worked at least thirty-seven and a half hours, per week, with some overtime, and were not paid correctly through cash wages and/or benefits." *Id.* at *4. Tulane filed a motion to dismiss the putative class's claims on the basis that the description of the class was too "broad" and "generalized" to state a claim. *Id.* at *1. Judge Carl Barbier agreed, basing his decision on England's failure to, among other things, provide job descriptions of the putative class members. *Id.* at *4.

England filed an amended complaint, and Tulane filed a second motion to dismiss the putative class's claims. *England*, 2016 WL 6520146. The amended complaint was largely similar to the original, but changed the definition of the putative class from "similarly situated, hourly, non-exempt employees" to "similarly situated, hourly, non-exempt *tutors*." *Id.* at *5 (internal quotations and citation omitted). Judge Barbier noted that while it would have been prudent for England to "provide a job description for the proposed class [or] use [England's] own job duties to define the contours of the class," the added reference of "tutors," while "minimal, . . . sufficiently

11

provide[d] [Tulane] with fair notice of the putative class." *Id.* Judge Barbier denied Tulane's motion on this basis. *Id.*

Magnolia Fleet likens this case to *England I*, but it is far more akin to *England II*. The Amended Complaint in this case describes the members of the collective by their job title of shore tankermen, just as the amended complaint in *England II* referred to the members of the class by their title of tutors. Indeed, the Amended Complaint goes beyond that to include information Judge Barbier noted would have been prudent for England to include in his amended complaint. The Amended Complaint in this case describes, in detail, the alleged duties of shore tankermen. The Amended Complaint explains shore tankermen are responsible for "driving to a docked transport ship, traveling aboard the transport ship to a customer's ship . . . , placing the fuel line in the customer's ship to refuel it, monitoring the refueling, then detaching the fuel hose, riding back to shore, and returning to the office . . . to wait for the next refueling call[;] were shore based, not assigned to a vessel, and not assigned any duties with respect to the operation of a vessel[;] spent most of their time on land, where they waited between refueling calls[;] [and] worked only in the Mississippi River refueling smaller ships such as tugboats." *Id.* at ¶¶ 20, 21, 23. Truong's description, unlike cases that have found a putative class definition lacking, describes the putative collective based on their specific job title, as well as a description of the job. *England I*, 2016 WL 3902595, at *4 ("While Plaintiff states that the putative collective members will be hourly employees, Plaintiff does not provide any job descriptions of the proposed class members."); *Creech*, 2012 WL 4483384, at *3 ("Although the Complaint provides certain details about the duties of the Plaintiff as a shift supervisor, it fails to provide any such description or details about the other proposed parties who are alleged to be 'similarly situated.' Plaintiff only claims the other putative collective members performed the same or similar job duties in that they 'provided

customer services' for the Defendants. This is not descriptive enough to give rise to a plausible right to relief."); *Flores*, 55 F.Supp.3d at 940 ("The complaint states, 'Named Plaintiffs seek to represent a nationwide putative collective of all persons who worked or work for Defendants and who were/are subject to Defendants' unlawful pay practices and policies at any point from three years prior to the filing of the instant matter to the present.'"). Indeed, "[m]aking sufficient factual allegations to support a putative action 'is a low bar,'" which, after careful review of the Amended Complaint and applicable case law, the Court finds the putative collective has cleared. *Guilbeau*, 2022 WL 199271, at *6 (quoting *Schnelle v. Chevron USA, Inc.*, No. 20-CV-112, 2021 WL 2773010, at *2 (W.D. Tex. Jan. 28, 2021)), *report & recommendation adopted*, 2021 WL 2773008 (W.D. Tex. Mar. 7, 2021).

Moreover, it is of no consequence that Magnolia Fleet insists there is no such thing as shore tankermen. At the motion to dismiss stage, the Court takes the plaintiff's factual allegations as true. *Cuvillier*, 503 F.3d at 401. The Amended Complaint alleges "shore tankermen" occupy a position, and the members of the collective are or were employed as such, and the Amended Complaint includes factual allegations describing the duties of shore tankermen. These allegations provide fair notice to Magnolia Fleet regarding which Magnolia Fleet employees the putative collective encompasses.[5] Moreover, this description dispels Magnolia Fleet's concern that "any

---

[5] Magnolia Fleet appears to argue that the inclusion of details about the collective throughout the Amended Complaint is improper because it forces Magnolia Fleet to "piec[e] together factual allegations strewn throughout a complaint" to determine the definition of the collective. R. Doc. 13-1 at 12 (quoting *Flores*, 55 F.Supp.3d at 940). In support of its argument, Magnolia Fleet cites to *Flores v. Act Event Services, Inc. Id.* In *Flores*, the plaintiffs described the putative class as "a nationwide class of all persons who worked or work for Defendants," and went on to describe in other portions of the complaint the duties of the members. *Id.* While the Court noted "[t]he plaintiffs should have used these job duties to assist in defining a more specific putative class," the Court also suggested, in a footnote to that very sentence, that using the members' job titles to define the class would have been sufficient to defeat the motion to dismiss. *See id.* at 940 n.5 ("Characterizing the relevant employees as 'Event Workers' may provide insight on how the complaint should define the putative action."). Truong did just this. The Amended Complaint defines the members of the putative collective by their title—shore tankermen—and goes on to specify the duties and characteristics of shore tankermen.

day rate employee would be swept up in the putative class." R. Doc. 13-1 at 13.  The only employees who will be considered eligible for the putative collective are those who fit the description of a shore tankerman.[6]  For these reasons, Magnolia Fleet's motion to dismiss the claims brought on behalf of the putative collective action must be denied.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Magnolia Fleet's Motion to Dismiss (Record Document 13) is **DENIED**.

New Orleans, Louisiana, this 19th day of March 2024.

*[signature]*

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[6] Magnolia Fleet argues Truong's definition of shore tankermen could impermissibly encompass seamen exempt from the FLSA.  While this argument may be relevant in determining whether Truong and the putative collective may bring a FLSA claim, it is not relevant in determining whether Truong's description of the putative collective provides Magnolia Fleet with fair notice.